THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Frances Debra Merritt,       
Respondent,
 
 
 

v.

 
 
 
George Todd Merritt,       
Appellant.
 
 
 

Appeal From Spartanburg County
Georgia V. Anderson, Family Court Judge

Unpublished Opinion No.  2005-UP-009
Heard November 16, 2004  Filed January 
 10, 2005

AFFIRMED IN PART, REVERSED IN PART,
and REMANDED

 
 
Jeffrey Falkner Wilkes, of Greenville, for Appellant.
James C. Cothran, Jr., of Spartanburg, for Respondent.
Joseph K. Maddox, Jr., of Spartanburg, for Guardian Ad Litem.
 
 

PER CURIAM: In this appeal arising from 
 a divorce decree, George Todd Merritt (Husband) argues the family court erred 
 in identifying and dividing the marital property, granting custody of the parties 
 child to Frances Deborah Merritt (Wife), requiring Husband to pay half of the 
 childs private school tuition, and awarding attorneys fees to Wife.  We affirm 
 in part, reverse in part, and remand.
FACTS
Frances and George Merritt were married in March 
 1992.  During the marriage, the parties accumulated very little personal property 
 because Husband came into the marriage with household goods he had retained 
 from a prior marriage. In July 1993, the couple had a child.  Two years later, 
 the couple built a house with the assistance of Husbands family.    In June 
 2000, after eight years of marriage, Wife learned that Husband was committing 
 adultery.  Soon thereafter, she initiated divorce proceedings.  In 2001, a divorce 
 was granted on the ground of adultery. Pursuant to the parties divorce, the 
 family court identified and divided marital property, granted primary custody 
 of the child to Wife, required Husband to pay half of the childs private school 
 tuition, and granted Wife attorneys fees.  This appeal followed.
STANDARD OR REVIEW
In appeals from the family court, this court has 
 authority to find the facts in accordance with our own view of the preponderance 
 of the evidence.  Wynn v. Wynn, 360 S.C. 117, 122, 600 S.E.2d 71, 74 (Ct. 
 App. 2004).  However, this broad scope of review does not require us to disregard 
 the findings of the family court.  Greene v. Greene, 351 S.C. 329, 335, 
 569 S.E.2d 393, 397 (Ct. App. 2002). We are mindful that the family court judge, 
 who saw and heard the witnesses, was in a better position to evaluate their 
 credibility and assign comparative weight to their testimony.  Roberson v. 
 Roberson, 359 S.C. 384, 388, 597 S.E.2d 840, 842 (Ct. App. 2004).  
 This is especially true in cases involving the welfare and best interests of 
 children.  Dorchester County Dept of Soc. Servs. v. Miller, 324 S.C. 
 445, 452, 477 S.E.2d 476, 480 (Ct. App. 1996).
The family court has broad discretion in determining 
 how marital property is to be valued and distributed.  Murphy v. Murphy, 
 319 S.C. 324, 329, 461 S.E.2d 39, 41 (1995).  Therefore, the family court may 
 use any reasonable means to divide the property equitably, and its judgment 
 will only be disturbed where abuse of discretion is found.  Id. at 329, 
 461 S.E.2d at 41-42.

 LAW/ANALYSIS
Husband argues that premarital personal property and 
 a workers compensation award were improperly transmuted and apportioned.  Next, 
 he argues the marital residence was improperly apportioned.  Husband also argues 
 that the courts child custody arrangement was in error and that he should not 
 be required to pay private school tuition for his child.  Finally, he argues 
 attorneys fees should not have been awarded to Wife.
 1.     Transmutation of Personal Premarital 
 Property 
Husband argues personal premarital property was improperly 
 transmuted because the family court failed to find any specific facts which 
 would indicate an intent that [the premarital property] become marital other 
 than their mere use during the marriage.  We disagree.
Marital property is defined as all real and personal 
 property which has been acquired by the parties during the marriage and which 
 is owned as of the date of filing or commencement of marital litigation . . 
 . .  S.C. Code Ann. § 20-7-473 (Supp. 2003).  However, property acquired by 
 either party prior to the marriage can be transmuted into marital property if: 
 (1) it becomes so commingled with marital property as to be untraceable; (2) 
 it is jointly titled; or (3) it is utilized by the parties in support of the 
 marriage or in some other manner so as to evidence an intent by the parties 
 to make it marital property.  Greene v. Greene, 351 S.C. 329, 338, 569 
 S.E.2d 393, 398 (Ct. App. 2002).  Importantly, transmutation is a matter of 
 intent to be gleaned from the facts of each case.  Id.   
Here, the family court specifically found 
 the items had been used throughout the marriage, and there was testimony that 
 Wife cleaned and cared for the personal property in the home.  Furthermore, 
 there was no evidence that the parties intended to keep the premarital property 
 separate and distinct.  Cf. Greene, 351 S.C. at 338-339, 569 S.E.2d 
 at 398-399 (finding no transmutation where the husband deliberately kept his 
 premarital property separate and distinct from the parties marital property).  
 We believe the use of the property under this set of facts indicates that the 
 parties themselves regarded the property as the common property of the marriage.  
 See Widman v. Widman, 348 S.C. 97, 117, 557 S.E.2d 693, 704 (Ct. 
 App. 2001).  Therefore, we reject Husbands argument that premarital property 
 was not transmuted and affirm the findings of the family court.
2.       Workers Compensation Award
Next, Husband argues the 
 workers compensation award he received for injuries sustained during the course 
 of the marriage should not have been apportioned equally with Wife because the 
 award was based on future disability.  We disagree.
Our supreme court has specifically ruled 
 that a workers compensation award acquired during the marriage is marital property.  
 See Orszula v. Orszula, 292 S.C. 264, 266, 356 S.E.2d 114, 115 
 (1987).  This rule was reaffirmed in Marsh v. Marsh, 313 S.C. 42, 46, 
 437 S.E.2d 34, 37 (1993).  In Marsh, the court considered a personal 
 injury settlement and explained the family court should consider all of the 
 equitable division factors and in many cases probably should[] award the proceeds 
 entirely to the injured party.  Id. at 45, 437 S.E.2d at 36.  Nevertheless, 
 the Marsh court affirmed an equal division of the proceeds from the settlement. 

Pursuant to the Orszula and Marsh cases, 
 the family court properly considered the $24,000 workers compensation award 
 as marital property.  Thus, our review shifts to whether it was appropriately 
 apportioned.  
Our law is premised on providing 
 the family court the flexibility to view each case based on the individual 
 circumstances peculiar to the parties involved and to fashion a division of 
 the parties assets in a manner that is uniquely fair to the parties concerned.  
 Id. at 46, 437 S.E.2d at 36.  Furthermore, section 20-7-472 of the South 
 Carolina Code (Supp. 2003) vests in the family court, not the appellate court, 
 the discretion to decide what weight should be assigned to the various factors 
 of equitable apportionment.  See Jenkins v. Jenkins, 345 S.C. 
 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001).  On review, we look to the 
 fairness of the overall apportionment; if the end result is equitable, it is 
 irrelevant that we might have weighed specific factors differently than the 
 family court.  Id.
In determining the equitable division of Husbands 
 workers compensation award, the family court stated:

Wife is entitled to one half (1/2) of the net proceeds of 
 [Husbands] Workers Compensation award with the money used to pay off the credit 
 cards and any outstanding doctors bills from [Husbands] injury being deducted 
 from the lump sum of $24,000.00.  Based upon the testimony received at trial, 
 Wife is entitled to $6,500.00 as equitable division of this marital asset.

The only evidence in the record about the award 
 is that Husband used $3,000 of it to reduce marital debt and gave $3,000 of 
 it to Wife in cash.  The record is devoid of any testimony describing Husbands 
 injuries or explaining how those injuries would impact his ability to earn income 
 in the future.  Therefore, based on the evidence in the record, we find no error 
 in the family courts apportionment of the award.    
 3.     Marital Residence 
Husband next argues the marital residence, which 
 is titled in his name, was improperly apportioned.  We disagree.
During the marriage, Husband traded land he owned 
 prior to the marriage for the lot on which he and Wife eventually built their 
 marital home.  In order to pay for the construction, Husband used $11,870 from 
 a premarital money market account, and the couple took out a mortgage.  The 
 cost of building the home was reduced because Husbands brother built its foundation 
 and Husbands father, who is a general contractor, completed the rest of the 
 construction for cost.  At the time of the parties divorce, the outstanding 
 balance on the mortgage was $31,544, and the equity in the home was $60,956.  

The family court apportioned the property by giving 
 Husband a special equity in the house for $10,000, the value of the lot, and 
 $11,870, the value of the money market account.  The remainder of the equity 
 in the home was divided equally between the parties.  
Husband argues the value of the time, labor, and 
 money his family invested in the home should be excluded from its equity.  Husband 
 relies on Sexton v. Sexton, 308 S.C. 37, 43, 416 S.E.2d 649, 654 (Ct. 
 App. 1992), and the statement that [t]he fact a substantial portion of the 
 value of the house is attributable to contributions made by the husbands family 
 should be a consideration in this case.  However, in Sexton, the court 
 was concerned the family court judge had not made any specific findings regarding 
 the equitable division factors.  Id.  Here, the family court did specifically 
 consider the equitable division factors in its order.  Additionally, in Sexton, 
 the parties only lived in the house for one year prior to initiation of litigation, 
 whereas in this case, the couple lived in the house for over five years prior 
 to Wifes discovery of Husbands infidelity and initiation of the litigation.  
 Id.  We therefore find no abuse in discretion of the family courts equitable 
 division.
 4.     Child Custody 
Husband argues the family 
 court erred by granting primary placement of the child with Wife.  We disagree.  

In a custody case, the best interest of the child 
 is the controlling factor.  Patel v. Patel, 359 S.C. 515, 526, 599 S.E.2d 
 114, 119 (2004).  To assess the best interest of the child, the court should 
 consider several factors, including: who has been the primary caretaker; the 
 conduct, attributes, and fitness of the parents; the opinions of third parties 
 (including GAL, expert witnesses, and the children); and the age, health, and 
 sex of the children.  Patel v. Patel, 347 S.C. 281, 285, 555 S.E.2d 
 386, 388 (2001).  Over time, it has become customary for the family court 
 to appoint a guardian ad litem in private custody disputes.  The guardian ad 
 litem operates as a representative of the court and assists by advocating for 
 the childs best interests and providing the court an objective view.  Id. 
 at 287, 555 S.E.2d at 389.  
In this case, the guardian 
 ad litem recommended joint physical custody so that the child could spend an 
 equal amount of time with each parent.  The family court awarded joint custody, 
 but it was arranged so that Wife would be the primary custodian.  The court 
 crafted a detailed and generous visitation schedule, granting Husband visitation 
 every Wednesday and every other weekend. The family court also divided holidays 
 and birthdays equally between the parties.  
The guardian ad litems recommendation 
 resulted from his perception that the conflict between the parties would continue, 
 and he believed the child would remain a tool for Wifes use in a power struggle 
 with Husband.  By giving the parties joint physical custody, the guardian believed 
 everyone is going to know that they dont have any kind of power over the other 
 person.  
We are also concerned 
 about a pattern of behavior directed against Husband by Wife.  Wife has made 
 unsubstantiated allegations that childs paternal grandmother sexually abused 
 the child.  She had Husband arrested for trespass when he arrived for visitation, 
 and they had a misunderstanding regarding the details of the prior visitation 
 order.  She confronted Husband at the county fair when she and the child saw 
 Husband there with his paramour and her son.  Finally, she has caused the school 
 to refuse the Husband access to child.  While Wife is certainly allowed to be 
 angry about the dissolution of the marriage, she must also understand the best 
 interests of her child require her to be civil and work with Husband.
Despite our concerns, we find no error in the family 
 courts decision to grant primary custody to Wife even though the guardian ad 
 litem recommended otherwise.  Initially, we note that the family court is not 
 bound by a guardians recommendation.  Pirayesh v. Pirayesh, 359 S.C. 
 284, 296, 596 S.E.2d 505, 512 (Ct. App. 2004).  Moreover, true joint custody, 
 as the guardian recommended, should only be awarded where there are exceptional 
 circumstances.  Patel v. Patel, 359 S.C. 515, 528-29, 599 S.E.2d 114, 
 121 (2004); see also Scott v. Scott, 354 S.C. 118, 125, 579 
 S.E.2d 620, 623 (2003) (stating joint physical custody is usually harmful to 
 the best interests and welfare of a child).   Here, the reason the guardian 
 gave for recommending joint custody stemmed from his concern that the child 
 would be used as a pawn in the parties disputes.  The family court ameliorated 
 this concern by issuing an order with specific visitation instructions.  Furthermore, 
 the tension between the parties would make joint physical custody of the child 
 extremely difficult.  We therefore find no error in the family courts custody 
 arrangement. 
 5.     Private School Tuition 
Husband also asserts the family court erred by 
 failing to consider the child support guidelines when ordering him to pay half 
 of the childs private school tuition.  We agree.
The court found the [Husband] voluntarily offered 
 to pay the tuition at trial and that he is paying child support pursuant to 
 the guidelines.   From an examination of Wifes financial declaration, it appears 
 Husbands monthly share of the tuition is $316.  However, at trial, Husband 
 only agreed to pay private school tuition if there was split custody, and he 
 stated that if he had to pay a greater amount of child support, he would not 
 be able to afford his share of private school. Therefore, the courts order 
 was based on a misapprehension of the testimony.   
The child support guidelines specifically allow 
 deviations to account for the educational expenses of the child, but also require 
 the deviations to be supported by written findings that clearly state the nature 
 and extent of the variation.  S.C. Code Ann. Regs. 114-4710 (Supp. 2003).  
 This court cannot find written findings to sufficiently support the decision 
 on this issue, and therefore, we remand this issue to the family court for consideration 
 of how the tuition requirements would impact the Husbands child support obligations.  

 6.     Attorneys Fees 
Husband argues the court erred by awarding Wife 
 $5,000 in attorneys fees.  Initially, Husband admits he is at fault for the 
 divorce, but seeks to temper this with the family courts finding that he had 
 informed Wife prior to committing adultery of his desire to separate.  Husband 
 also points to the courts findings that Wifes actions have aggravated the 
 litigation.  We find these arguments unavailing.
The award of attorneys fees is a matter left to 
 the discretion of the family court judge and will not be overturned absent an 
 abuse of that discretion.  Donahue v. Donahue, 299 S.C. 353, 365, 384 
 S.E.2d 741, 748 (1989).  To determine whether to award a party attorneys fees, 
 the family court should consider each partys ability to pay his or her own 
 fees, the beneficial results obtained by the attorney; the parties respective 
 financial conditions, and the effect of the fee on each partys standard of 
 living.  Griffith v. Griffith, 332 S.C. 630, 645, 506 S.E.2d 526, 534 
 (Ct. App. 1998) (citing E.D.M. v. T.A.M., 307 S.C. 471, 415 S.E.2d 812 
 (1992)).
Here, the family court found Wife had substantially 
 prevailed and that Husband was at fault for the litigation.  Furthermore, the 
 court earlier found Husbands gross monthly income was significantly greater 
 than Wifes.  We therefore affirm the award.
CONCLUSION
We AFFIRM the family courts equitable division 
 of marital property, its custody arrangement, and its award of attorneys fees.  
 We REVERSE the family courts requirement that Husband pay half of the 
 childs private school tuition without allowing it to factor into his child 
 support obligation, and REMAND this issue to the family court.
AFFIRMED IN PART, REVERSED 
 IN PART, AND REMANDED.
HEARN, C.J., GOOLSBY, and WILLIAMS, concur.